UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DERRICK FRUGA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-0246** |
| **O. KENT ANDREWS, WARDEN**<br>**ALLEN CORRECTIONAL CENTER** | **SECTION "C"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.   Factual Background

The petitioner, Derrick Fruga ("Fruga"), is a convicted inmate incarcerated in the Allen Correctional Center in Kinder, Louisiana.[2]  On May 2, 2002, Fruga and a co-defendant, Leonard

---

[1] Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

Oliver, were charged by bill of information in Orleans Parish with the attempted second degree murder of Joshua Ridley.[3]

The record reflects that, on the night of March 22, 2002, New Orleans Police Officer Berwick Nero heard gunshots as he drove in the 8000 block of Earhart Boulevard.[4]  A person in the 7800 block of Earhart Boulevard stopped Officer Nero and told him that a man had been shot. Officer Nero found the conscious and bleeding victim, Joshua Ridley, lying in the doorway of a neighborhood daiquiri shop.  Officer Nero learned that the shooting occurred around the corner at the intersection of Fern and Colapissa Streets.  Ridley told the officer that he was shot by two men, and he identified Fruga as one of the shooters.

Detective Jimmie Turner also interviewed Ridley on April 10, 2002.  Ridley told him that he was shot by Fruga, and a second suspect identified by the nickname "Naughty," who was later determined to be Oliver.  Detective Turner compiled a six person photographic lineup from which Ridley positively identified Oliver as the second shooter.  Subsequently, Detective Turner obtained arrest warrants for Fruga and Oliver.

The victim, Joshua Ridley, testified at trial that, on the day of the shooting, he went to his former residence on Colapissa Street to gather clothes his mother had left behind when the family moved out of the house two days earlier.  While there, he met his friend Corey, and they went to a neighborhood daiquiri shop to shoot pool.  Later that evening, he and Corey returned to his Colapissa Street former-residence where they sat on the porch and talked.  At approximately 9:00

---

[3]St. Rec. Vol. 2 of 8, Bill of Information, 5/2/02.

[4]The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Fruga*, 932 So.2d 759 (La. App. 4th Cir. 2006) (Table); St. Rec. Vol. 2 of 8, 4th Cir. Opinion, 2005-KA-0358, pp. 1-4, 6/7/06.

p.m., Ridley observed someone walk to the corner of Colapissa and Fern Streets and then jump back as if to conceal his presence. Ridley and Corey walked to the corner to investigate. When they reached the corner, Oliver and Fruga emerged from an alley and shot at Ridley. Ridley fell to the ground. Fruga and Oliver continued to shoot him. Ridley got up and ran but fell again as other bullets hit him. Ridley again stood and ran until he collapsed in the daiquiri shop doorway. Ridley had been shot seven times. The gunshots severed an artery in his arm, lodged in his back, and lacerated his liver, bladder, intestines, and stomach. Before he lost consciousness, Ridley told the shop manager that Fruga shot him. Ridley also testified that he and the two men had fought in the past but that they were never able to beat him.

Fruga and Oliver were jointly tried before a jury on July 13 and 14, 2004, and both men were found guilty as charged of attempted second degree murder.[5] On November 12, 2004, the Trial Court denied Fruga's motions for new trial and for post-verdict judgment of acquittal.[6] The Court thereafter sentenced both men to serve 30 years in prison at hard labor.[7]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Fruga's counsel raised seven assignments of error: (1) the Trial Court erred in denying the motion for mistrial after a seated juror was replaced by an alternate; (2) the Trial Court erred in overruling the defense's objection to the prosecutor's closing arguments; (3) the Trial Court erred in denying the defense's challenges for cause on two jurors; (4) the Trial Court erred in denying the motion for mistrial based on the

---

[5] St. Rec. Vol. 2 of 8, Trial Minutes, 7/13/04; Trial Minutes, 7/14/04; St. Rec. Vol. 5 of 8, Trial Transcript, 7/13-14/04.

[6] St. Rec. Vol. 2 of 8, Minute Entry, 11/12/04.

[7] St. Rec. Vol. 2 of 8, Sentencing Minutes, 11/12/04.

references to other crimes evidence; (5) the physical evidence was insufficient to support the verdict; (6) the guilty verdict was not unanimous; and (7) the sentence was excessive.

On June 7, 2006, the Louisiana Fourth Circuit affirmed Fruga's conviction finding no merit to the first six claims.[8] The Court declined to rule on the excessive sentence issue, because the Trial Court failed to rule on Fruga's motion to reconsider the sentence. The Court vacated Fruga's sentence and remanded the matter for resentencing.[9]

In response to the remand, the Trial Court resentenced Fruga on July 12, 2006, and denied his motion to reconsider.[10] Fruga did not seek further review of the resentencing.

In the meantime, on July 4, 2006, Fruga submitted *pro se* a writ application to the Louisiana Supreme Court seeking review of his direct appeal.[11] The Court denied the application without stated reasons on March 9, 2007.[12] Fruga's conviction became final 90 days later, on June 7, 2007, when he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[8]*State v. Fruga*, 932 So.2d at 759; St. Rec. Vol. 2 of 8, 4th Cir. Opinion, 2005-KA-0358, 6/7/06.

[9]*Id*.

[10]St. Rec. Vol. 1 of 8, Docket Entry, 7/12/06.

[11]St. Rec. Vol. 7 of 8, La. S. Ct. Writ Application, 06-KO-1835, 7/24/06 (dated 7/4/06, postal metered 7/6/06).

[12]*State v. Fruga*, 949 So.2d 438 (La. 2007); St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2006-KO-1835, 3/9/07.

**II.     Procedural Background**

On January 18, 2008, Fruga submitted an application for writ of mandamus to the Louisiana Fourth Circuit.[13] Fruga sought an order compelling the Trial Court to rule on an application for post-conviction relief which he claimed to have filed on or about July 13, 2007.  Finding no proof that the application was filed, the court denied the writ finding that "there is nothing for this court to review."[14]  Fruga did not seek further review of this ruling.

On August 14, 2009, Fruga submitted another application for writ of mandamus to the Louisiana Fourth Circuit.[15]  With this application, Fruga submitted a copy of the purported application for post-conviction relief and copies of certified mail receipts tending to show that, on April 8, 2008, he mailed an application for post-conviction relief which was received by the clerk of the state trial court on April 10, 2008.  The application included four grounds for relief: (1) ineffective assistance of counsel; (2) misidentification; (3) insufficient evidence; and (4) perjury by a State witness.  Fruga sought an order directing the Trial Court to rule on the application.  The Louisiana Fourth Circuit denied the application on September 9, 2009, after review of his application and finding that he was not entitled to relief.[16]

---

[13]St. Rec. Vol. 8 of 8, 4th Cir. Writ Application, 2008-K-89, 1/23/08 (dated 1/18/08).

[14]St. Rec. Vol. 8 of 8, 4th Cir. Order, 2008-K-0089, 2/20/08.

[15]St. Rec. Vol. 8 of 8, 4th Cir. Writ Application, 2009-K-1123, 8/18/09 (dated 8/14/09).

[16]St. Rec. Vol. 8 of 8, 4th Cir. Order, 2009-K-1123, 9/9/09.

Fruga submitted a writ application to the Louisiana Supreme Court on September 25, 2009, seeking review of the appellate court's ruling on his claims.[17] The Court denied the application without stated reasons on August 18, 2010.[18]

## III.  Federal Petition

On February 4, 2011, the clerk of this Court filed Fruga's petition for federal habeas corpus relief, in which he raises two claims:[19] (1) counsel was ineffective where he failed to protect the petitioner's rights before and after trial in the following ways: (a) he had a defeatist attitude; (b) failure to investigate the lack of evidence to link petitioner to the crime; (c) failure to listen to the client and conduct meaningful cross-examination; (d) failure to call a primary witness to the shooting; and (e) failure to explore the lack of a positive identification or motive for the crime; and (2) petitioner is actually innocent.

The State filed a response in opposition to Fruga's petition alleging that his petition was not timely filed and that he is not entitled to equitable tolling.[20] Fruga did not file a traverse to the State's opposition.

---

[17] St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 09-KH-2139, 10/1/09 (dated 9/25/09).

[18] *State ex rel. Fruga v. State*, 42 So.3d 402 (La. 2010); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2009-KH-2139, 8/18/10.

[19] Rec. Doc. Nos. 1-1.

[20] Rec. Doc. No. 9.

## IV.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[21] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on January 20, 2011.[22] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

In this case, the State argues that Fruga's petition was not timely filed in this Court. The record supports that conclusion for the reasons that follow.

## V.   Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[23] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As discussed above,

---

[21] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[22] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Fruga's petition on February 4, 2011, when he paid the filing fee. Fruga's signature on the petition is dated January 20, 2011. This is the earliest date on which he could have submitted the pleadings to prison officials for mailing to this Court. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

[23] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest

Fruga's conviction was final on June 7, 2007. Under the plain language of § 2244, Fruga had one year, or until June 6, 2008,[24] to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Fruga's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the

---

of--
A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

[24] 2008 was a leap year.

application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 122 (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, the AEDPA's one-year filing period began to run on June 8, 2007, the day after Fruga's conviction was final. The period ran uninterrupted for 305 days until April 8, 2008, when Fruga <u>mailed</u> an application for post-conviction relief to the state trial court. The mailing date is demonstrated by the certified mail receipts provided to the state courts by Fruga. Under the applicable prisoner mailbox rule, a prisoner's pleading is filed when it is delivered to prison officials

for mailing, "regardless of whether the pleading actually reaches the court." *Stoot v. Cain*, 570 F.3d 669, 672 (5th Cir. 2009). The record is sufficient for the Court to provide tolling credit to Fruga for the April 8, 2008, submission.

The Court recognizes that, in another writ application, Fruga alleged to the Louisiana Fourth Circuit that he had filed an application for post-conviction relief in the state trial court prior to that on July 13, 2007. The Louisiana Fourth Circuit found no proof of that filing and, more importantly, Fruga provided the Court with no proof of that filing, as he later did with the 2008 submission. Fruga did not, and still has not, presented any logs, certified mail receipts, or a even a copy of the purported 2007 application for the state courts, or this court, to have applied the mailbox rule or to have acknowledged the filing under *Stoot*. The Court also notes that Fruga has failed to recognize this alleged filing in his own procedural history presented in his federal habeas petition.[25]

Thus, unlike the 2008 submission, there was, and still is, nothing in the record to support a finding that anything was mailed to or filed in a state court on or about July 13, 2007. For purposes of the federal habeas petition, Fruga has not shown, and there is no presumption of, a properly filed state post-conviction application prior to the April 8, 2008, submission.

Considering the April 8, 2008, state post-conviction application, the AEDPA filing period remained tolled from that date until August 18, 2010, when the Louisiana Supreme Court denied

---

[25]Instead, Fruga suggests that he "submitted" an application for post-conviction relief to the "District Attorney" on "August 9, 2007." Rec. Doc. No. 1-1, p. 3. The District Attorney is not a state court, and there is no indication anywhere in the state record or in Fruga's own pleadings that anything was properly filed in a state court on August 9, 2007.

Fruga's related writ application. The AEDPA filing period began to run again on August 19, 2010, and did so for the remaining 60 days, until Monday, October 18, 2010,[26] when it expired.

As noted previously, Fruga is deemed to have filed his federal habeas petition on January 20, 2011. His federal petition, therefore, was filed three months <u>after</u> the one-year AEDPA filing period expired and is untimely.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

In this case, Fruga has not presented, and the record does not contain, any basis for extending the extraordinary remedy of equitable tolling. Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, __ U.S. __, 130 S.Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his

---

[26]The sixtieth day was Sunday, October 17, 2010, leaving the period to expire on the next business day, Monday October 18, 2010, under federal law.

state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Davis*, 158 F.3d at 808 n.2 (assuming that equitable tolling was warranted when federal district court three times extended the deadline to file habeas petition beyond expiration of AEDPA grace period); *accord Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling). This record contains no extraordinary circumstance which would entitle Fruga to equitable tolling.

Furthermore, although unrelated to the timeliness of this petition, Fruga claims that he is actually innocent of the crime for which he has been convicted. Fruga's actual innocence argument is foreclosed by existing jurisprudence in this Circuit which establishes that equitable tolling of the federal limitations period is not warranted simply because the petitioner claims he is actually innocent. *Henderson v. Thaler*, 626 F.3d 773, 780–81 (5th Cir. 2010); *Cousin*, 310 F.3d at 849 (citing *Felder*, 204 F.3d at 171); *Higgins v. Cain*, No. 07-9729, 2010 WL 5437279, at * 5 (E.D. La. Dec. 3, 2010), report adopted by, 2010 WL 5441627, at *1 (E.D. La. Dec. 27, 2010) (Africk, J.); *Mead v. Cain*, No. 08-3173, 2010 WL 3488219, at *12 (E.D. La. Apr. 21, 2010), report adopted by, 2010 WL 3502801, at *1 (E.D. La. Aug. 26, 2010) (Berrigan, J.). The limitations period also is not tolled merely because the petitioner believes he is entitled to relief on the claims raised in his federal habeas petition. *United States v. Alexander*, No. Crim. A 94-343, 2000 WL 1092618 at *3 (E.D. La.

Aug. 2, 2000) (Barbier, J.); *Higgins*, 2010 WL 5437279, at * 5; *Mead*, 2010 WL 3488219, at *12; *Gaines v. Cockrell*, Nos. 3-02-CV-2003-G/3-02-CV-2373-G, 2003 WL 222444 (N.D. Tex. Jan. 28, 2003) (Order adopting Report) (citing *Melancon*, 259 F.3d at 408).

Fruga's federal petition is deemed filed on January 20, 2011, which was three months after the AEDPA filing period expired on October 18, 2010. Therefore, Fruga's federal petition was untimely filed and must be dismissed for that reason.

## VI.  Recommendation

It is therefore **RECOMMENDED** that Derrick Fruga's petition for issuance of a writ of habeas corpus filed under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[27]

New Orleans, Louisiana, this 15th day of August, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[27]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.